Filed 5/25/22  P. v. Rubio CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSE LUIS RUBIO,<br><br>  Defendant and Appellant. | F079795<br><br>(Super. Ct. No. CF90414770)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Eric Christoffersen, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Franson, J. and Peña, J.

## INTRODUCTION

In 1990, a jury convicted petitioner Jose Luis Rubio of the first degree murder of Jose Morales Araiza (Pen. Code,[1] § 187, subd. (a)), with a special circumstance that the murder was committed during the commission or attempted commission of a robbery (§ 190.2, subd. (a)(17)), and an enhancement for personal use of a deadly and dangerous weapon, to wit, a tire iron (§ 12022, subd. (b)). The trial court sentenced petitioner to a term of life without the possibility of parole, plus one year.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. The court summarily denied the petition on the ground petitioner was the actual killer and a major participant in the underlying felony who acted with reckless indifference to human life, disqualifying factors pursuant to section 1170.95, subdivision (a)(3).

On appeal, petitioner argues the trial court erred in denying the petition without appointing counsel, providing an opportunity for briefing, and holding an evidentiary hearing. We conclude the court erred in failing to appoint counsel and allow for briefing, but the error was harmless because the record of conviction establishes petitioner is ineligible for resentencing as a matter of law. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying petitioner's offenses may be briefly summarized as follows.[2] On October 17, 1986, Morales went to a bar in Mendota with two friends. He told his friends he was leaving to have sex with a woman and would be right back, but never returned. Two days later, his body was found in a field approximately three miles from Mendota. Morales had multiple injuries, including abrasions and lacerations to his face, left arm and shoulder, and left back, and fractures to his skull and facial bones. A

---

[1] Undesignated statutory references are to the Penal Code.

[2] Our factual summary is based on the facts as stated in our opinion in petitioner's direct appeal, which is part of petitioner's request for judicial notice, discussed below. We do not rely on these facts in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

pathologist opined the injuries were inflicted by more than one weapon and that Morales's death was caused by cerebral concussion and lacerations to the brain. The initial investigation into Morales's death developed no useful leads and was suspended. (*People v. Rubio* (May 18, 1993, F016037) [nonpub. opn.] (*Rubio*).)

In November 1989, a Merced County Sheriff's deputy contacted Fresno County investigators to report a statement made by a woman in custody. The woman reported a conversation with her sister-in-law, Christina Garcia, who stated she was involved in the killing of a man near Mendota whose body was left by the side of the road. Garcia subsequently was arrested and charged with Morales's murder, and later was granted immunity and gave a statement regarding the circumstances of the crime. Garcia reported that she went to the bar in Mendota on October 17, 1986, with her sister-in-law, Elsie Franco. Garcia noticed petitioner standing outside. Before long, Morales approached Garcia and offered her $20 for sex. Garcia agreed and left the bar, followed by Morales and Franco. Garcia and Morales got into Garcia's car and Franco stayed behind to talk to petitioner. Eventually, Garcia joined Franco and petitioner, and petitioner proposed that the three of them rob Morales. Garcia agreed and they all got into her car with Morales and left the bar. (*Rubio*, *supra*, F016037.)

Garcia eventually pulled to the side of the road. Petitioner got out of the car and ordered Morales to get out and demanded money. Morales refused and petitioner hit him in the face with a fist. Garcia said, " 'Jose, leave him alone,' " and petitioner then stated, " 'You fucked up. Now I got to kill him.' " A fight ensued and Franco joined in. Eventually, Morales was on his back, with Franco sitting on his legs and holding his arms. Petitioner was bent over Morales's chest beating him with a tire iron. The beating continued for some time. Eventually, the three left the scene. (*Rubio*, *supra*, F016037.) However, other testimony was presented at trial to suggest that petitioner was present at the scene of the murder but that Franco committed the crime. (*Rubio*, *supra*, F016037.)

3.

On October 19, 1990, a jury found petitioner guilty of first degree murder, with the special circumstance the murder was committed during the commission or attempted commission of a robbery, and an enhancement for personal use of a deadly and dangerous weapon, to wit, a tire iron.[3] On April 15, 1991, the trial court sentenced petitioner to a term of life without the possibility of parole, plus an additional year for the weapon use enhancement. On May 18, 1993, this court affirmed. (*Rubio*, *supra*, F016037.)

On July 3, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95. In the form petition, petitioner stated that a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of first or second degree murder at trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. He further averred that the victim was not a peace officer in the performance of his duties, and petitioner was not the actual killer, did not act with an intent to kill, and was not a major participant in the underlying felony or did not act with reckless indifference to human life in the course of the crime. Petitioner additionally requested counsel be appointed to represent him on the petition.

On July 24, 2019, the court denied the petition as follows:

"Petitioner . . . has failed to make a prima facie showing that he falls within the provisions of Penal Code section 1170.95. The condition set out at Penal Code [section] 1170.95[, subdivision] (a)(3) does not apply. Petitioner was more than a mere participant in the crime. Petitioner was the actual killer. Petitioner was a major participant in the underlying felony

---

[3] This apparently was petitioner's second trial on these charges. In a petition for review of this court's opinion in petitioner's direct appeal, petitioner's counsel represented that the jury in petitioner's first trial was unable to reach a verdict. Records pertaining to petitioner's first trial are not before us.

4.

and acted with reckless indifference to human life.  Petitioner is not eligible for resentencing."

This timely appeal followed.

## **DISCUSSION**

**I.      Requests for Judicial Notice**

At the outset of this appeal, the court reporter manager for the Fresno County Superior Court notified this court that court reporter notes needed to prepare transcripts in relation to petitioner's criminal trial had been destroyed and the court reporter assigned to petitioner's case was no longer a licensed court reporter.  Subsequently, this court ascertained that our own copy of the appellate record in petitioner's direct appeal, *People v. Rubio*, F016037, had been destroyed pursuant to California Rules of Court, rule 10.1028.

The parties have filed multiple requests for judicial notice pertaining to their own efforts to obtain copies of the record of petitioner's criminal trial and the record on appeal in petitioner's direct appeal.  Some of those requests remain pending.

**A.      Petitioner's May 18, 2020 Request**

On May 18, 2020, petitioner filed a request for judicial notice of "the reporter's transcript of [petitioner's] 1990 trial, which was the subject of a prior appeal No. F016037, and the petition for review in that proceeding, No. S033520."  Petitioner's appellate counsel represented that she had received a copy of the trial transcripts from petitioner's brother, and believed these to be the only remaining copies.  Although the pagination of the transcripts was not consecutive, counsel believed them to contain all trial proceedings.  Petitioner's counsel further represented that she obtained a copy of the petition for review through a Google search.

In response, the People noted the transcripts were not accompanied by a sworn statement from petitioner's brother relating to the authentication of the documents and thus the documents had not been properly authenticated pursuant to Evidence Code

section 1401. Nonetheless, the People were "willing to treat the documents as genuine at present, while reserving the right to object, should further developments reveal that they are not what they appear to be, or should they contain serious, material omissions." The People also expressed authentication concerns regarding the petition for review, but noted the copy of this court's opinion that was attached to the petition appeared genuine and thus the People were "willing to treat it as genuine unless further developments indicate otherwise."

B.    The People's June 24, 2020 Request

On June 24, 2020, the People filed a request for judicial notice of portions of the record on appeal in *People v. Rubio*, F016037. These included volumes 1 through 3 of the clerk's transcript, volumes 1 through 12 of the reporter's transcript, specified exhibits from petitioner's trial, and this court's opinion in the appeal.[4] The People pointed out that, unlike the reporter's transcripts submitted by petitioner, the reporter's transcripts in the People's possession were continuously paginated. However, because the records contained juror identifying information, the People did not attach them to their motion. The People requested a ruling from this court regarding release or restriction of the juror identifying information before providing the records to the court and opposing counsel.

In a purported response to the People's June 24, 2020 request for judicial notice, petitioner's counsel replied to the People's response to petitioner's May 18, 2020 request for judicial notice. Petitioner's counsel argued that the People's response effectively accused her of "committing perjury" and presenting altered or falsified documents to the court. Petitioner's counsel argued that the documents submitted with her prior request for judicial notice were properly authenticated. With regard to the People's request for judicial notice, petitioner's counsel argued her "integrity had been impugned" by the

---

[4] The People noted, however, that the opinion appeared to be duplicative of the opinion submitted with petitioner's request for judicial notice.

implication that the documents could not be released to her because they contained juror identifying information. She asked that the People be admonished for impugning her integrity. She also requested an opportunity to examine the documents, and to submit them to the court as a proposed settled statement with regard to an adequate record on appeal.

On August 19, 2020, this court denied the People's June 24, 2020 request without prejudice to refiling the motion with a copy of the relevant records, with any juror identifying information redacted or removed. To the extent juror identifying information was relevant to the appeal, the People were ordered to file an unredacted copy under separate cover.

C.      The People's August 26, 2020 Request

The People filed their renewed request for judicial notice on August 26, 2020, seeking judicial notice of the information, jury instructions, verdict, trial testimony, and sentencing proceedings, all contained in the record on appeal in *People v. Rubio*, F016037. With their request, the People submitted partial copies of volumes 1 through 3 of the clerk's transcript, partial copies of volumes 2 through 8 of the reporter's transcript, and volume 12 of the reporter's transcript, with juror identifying information redacted.

Petitioner filed a request for a full copy of materials that the People possessed in relation to the underlying criminal case. Petitioner then filed an opposition to the request for judicial notice on the ground the partial record submitted by the People was not an adequate record and therefore violated petitioner's due process rights.

D.      Petitioner's September 14, 2020 Request

On September 14, 2020, petitioner renewed his request for judicial notice of the materials submitted with his May 18, 2020 request. Petitioner argued both that the People had failed to establish that they had a full appellate record, and that the People had failed to provide an adequate substitute for the materials submitted by petitioner.

7.

### E. Further Proceedings

This court directed the People to provide petitioner's counsel with a full and complete electronic copy of the appellate record in the People's possession. This court also afforded petitioner additional time to respond to the People's renewed request for judicial notice.

On September 18, 2020, the People filed notice of having provided the record to petitioner's counsel. Petitioner did not file a further response to the People's renewed request for judicial notice.

### F. Analysis

As will be evident from our analysis of the issues presented on appeal, nearly all the records submitted by both parties are irrelevant to our disposition.

Nonetheless, for purposes of ensuring an adequate appellate record relating to petitioner's arguments, we grant petitioner's May 18, 2020 request for judicial notice. After the People reserved their right to object to the materials submitted by petitioner, they located their own copy of the appellate record and raised no specific objections to the authenticity of the materials presented by petitioner. Hence, we grant petitioner's May 18, 2020 request in full. Petitioner's renewed motion for judicial notice of the same materials, filed September 14, 2020, is denied as moot.

For the same reason, we grant the People's renewed request for judicial notice, filed August 26, 2020. Petitioner's counsel's only objection to this request was that she was not provided the full appellate record. She subsequently was provided a copy of that record and was afforded additional time to oppose the People's request. She did not do so. Accordingly, the People's request of August 26, 2020 is granted.

## II. The Petition

### A. Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences

8.

doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[5] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).)

---

[5] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]
>
> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]
>
> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1170.95, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (§ 1170.95, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) However, the prima facie inquiry is limited and, at this stage of the proceedings,

the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (§ 1170.95, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

B.      Appointment of Counsel

Petitioner contends the trial court erred in failing to appoint counsel.

At the time the trial court ruled on the petition, our Supreme Court had not resolved whether section 1170.95 requires the appointment of counsel or further briefing immediately upon the filing of a facially sufficient petition. (See *Lewis*, *supra*, 11

Cal.5th at pp. 961-967.) However, both our Supreme Court and Legislature have since clarified that counsel must be appointed if requested, and briefing must proceed, so long as the petition complies with the requirements of section 1170.95, subdivision (b)(1) and (2). (§ 1170.95, subd. (b)(3); accord, *Lewis*, at pp. 962-963, 967.) Here, the People do not suggest the petition failed to meet the requirements of section 1170.95, subdivision (b). Accordingly, appointment of counsel and a full opportunity for briefing were required by section 1170.95, subdivisions (b)(3) and (c). (See *Lewis*, at pp. 961-963, 967.) The court erred in disposing of the petition without following these procedures.

C.     Prejudice

Because the trial court erred in failing to appoint counsel and allow further briefing on the petition, we may affirm only if petitioner was not prejudiced by the error. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.) As we explain, we conclude petitioner was not prejudiced because the robbery special circumstance finding establishes petitioner is ineligible for resentencing as a matter of law.

Pursuant to section 1170.95, a petitioner is ineligible for resentencing if he or she was the actual killer, acted with the intent to kill or malice aforethought, or was a major participant in the underlying felony who acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 842.) Here, the jury found true a robbery special circumstance pursuant to section 190.2, subdivision (a)(17), which imposes a sentence of death or life without the possibility of parole for a murder committed in the commission or attempted commission of a robbery. At the time petitioner committed the offense, this special circumstance applied only where the defendant was the actual killer or intentionally aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of first degree murder. (§ 190.2, former subd. (b).) By finding this special circumstance true, the jury made findings necessary to sustain a felony-murder conviction

12.

under the amended law. The jury's finding on the robbery special circumstance establishes that petitioner is ineligible for resentencing as a matter of law.

Petitioner nonetheless contends the special circumstance finding is not dispositive because the jury was not properly instructed on the special circumstance. We reject this proposition. Section 1170.95 provides a mechanism for resentencing individuals whose convictions are no longer valid due to changes to sections 188 and 189. (§ 1170.95, subd. (a)(3).) It does not provide a mechanism for challenging a jury's prior factual findings. (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.) "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison*, at p. 461.) In other circumstances, this court has declined to utilize the section 1170.95 procedure to examine the record of conviction to determine whether a special circumstance finding was properly entered. (*People v. Simmons* (2021) 65 Cal.App.5th 739, 749, review granted Sept. 1, 2021, S270048.) Rather, this court has concluded that such findings are binding on the issues necessarily decided by the jury, unless the findings were invalidated on direct appeal or in a habeas proceeding. (*Ibid.*) Petitioner's special circumstance finding has not been invalidated on direct appeal or in habeas. The finding establishes that petitioner is ineligible for resentencing as a matter of law. He therefore was not prejudiced by the court's denial of his petition without the appointment of counsel.

Furthermore, petitioner's argument regarding instructional error is meritless. Petitioner's trial took place in September 1990, after amendments to section 190.2 took effect. These amendments provided, in relevant part, that the special circumstance also could be applied to a major participant in the underlying felony who acted with reckless indifference to human life. (See § 190.2, subd. (d); see also Initiative Measure, Prop. 115, § 10, approved by voters, Primary Elec. (June 5, 1990) eff. June 6, 1990.) Petitioner contends the jury instructions in his trial were deficient because they omitted

the language relevant to this amendment.  Petitioner is incorrect.  The amendment expanded the class of offenders subject to a sentence of death or life without the possibility of parole.  Our Supreme Court has held that the amendment does not apply retroactively to the prosecution of crimes committed before the effective date of Proposition 115.  (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287.)

Petitioner's jury was properly instructed on the elements of the special circumstance applicable at the time he committed the offense.  More specifically, the jury was instructed it could find the special circumstance true only if the defendant "did the act causing death; or intentionally aided another in the killing of a human being . . . with the specific intent to kill."  In the event the jury was unable to decide whether petitioner was the actual killer or an aider and abettor, the jury was instructed it must also find that petitioner "intended either to kill a human being . . . or intentionally aided another in killing a human being . . . with the specific intent to kill."  The record establishes petitioner either was the actual killer or aided and abetted in the murder with intent to kill.  He is ineligible for resentencing on that basis.

In sum, petitioner is ineligible for resentencing as a matter of law.  He therefore was not prejudiced by the court's summary denial of his petition.  (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.)

## **DISPOSITION**

The order is affirmed.

14.